```
                    UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS


_____
                                    )
JOHN DOE,                           )
                                    )
                 Plaintiff,         )
                                    )
     v.                             )    Civil Action
                                    )    No. 13-10103-PBS
KINAN K. HREIB, STEPHEN E.          )
SOUTHARD, and DANIEL P. MCQUILLEN,  )
                                    )
                 Defendants.        )
_____)
```

## MEMORANDUM AND ORDER

June 5, 2019

Saris, C.J.

Plaintiff John Doe sued three physicians (Dr. Kinan K. Hreib, Dr. Stephen E. Southard, and Dr. Daniel P. McQuillen) and Lahey Clinic, Inc. ("Lahey") for failure to properly and timely diagnose his HIV infection, which resulted in the spread of the infection and permanent physical and mental damage. A jury found Dr. Hreib and Dr. Southard ("the doctors") liable for negligence and awarded Doe $18.4 million in compensatory damages. The Court entered judgment for Doe in this amount. After trial, the doctors moved for judgment as a matter of law, a new trial on liability and damages, or remittitur of the jury award. At the post-trial motion hearing, the Court recognized that the doctors

raised a strong argument for remittitur and urged the parties to consider settling. Before the Court ruled on the post-trial motions, the parties settled the claims against the doctors. In the release accompanying the settlement, Doe agreed to "cooperate fully in executing and filing all pleadings necessary to vacate the judgment entered in the Lawsuit and have the Lawsuit dismissed with prejudice and without costs." Dkt. No. 240-1 at 5. He also reserved the right to pursue claims against Lahey (which was voluntarily dismissed during trial), including under Mass. Gen. Laws chs. 93A and 176D. Doe subsequently filed a second lawsuit against Lahey for violation of Chapters 93A and 176D.

On March 29, 2019, the doctors filed a "joint" motion to vacate the judgment against them. Doe notified the Court three days later that he did not assent to the motion. The doctors filed a second motion to vacate on April 9. In this motion, they point to Doe's agreement in the release that he would cooperate in vacating the judgment. Doe responds that the parties settled with the understanding that he would pursue a claim under Chapters 93A and 176D against Lahey for unfair and deceptive insurance settlement practices. A court would calculate multiple damages for a willful or knowing violation using the $18.4 million judgment as the base amount, Doe explains, so he would not agree to vacate the judgment unless Defendants stipulated to

raised a strong argument for remittitur and urged the parties to consider settling. Before the Court ruled on the post-trial motions, the parties settled the claims against the doctors. In the release accompanying the settlement, Doe agreed to "cooperate fully in executing and filing all pleadings necessary to vacate the judgment entered in the Lawsuit and have the Lawsuit dismissed with prejudice and without costs." Dkt. No. 240-1 at 5. He also reserved the right to pursue claims against Lahey (which was voluntarily dismissed during trial), including under Mass. Gen. Laws chs. 93A and 176D. Doe subsequently filed a second lawsuit against Lahey for violation of Chapters 93A and 176D.

On March 29, 2019, the doctors filed a "joint" motion to vacate the judgment against them. Doe notified the Court three days later that he did not assent to the motion. The doctors filed a second motion to vacate on April 9. In this motion, they point to Doe's agreement in the release that he would cooperate in vacating the judgment. Doe responds that the parties settled with the understanding that he would pursue a claim under Chapters 93A and 176D against Lahey for unfair and deceptive insurance settlement practices. A court would calculate multiple damages for a willful or knowing violation using the $18.4 million judgment as the base amount, Doe explains, so he would not agree to vacate the judgment unless Defendants stipulated to

this amount for this purpose. The doctors refuse to accept this stipulation (and in any event, their attorneys no longer represent Leahy).

In their motion, the doctors do not identify the procedural basis for their request to vacate the final judgment. They appear to rely on Federal Rule of Civil Procedure 60(b), which "grants federal courts the power to vacate judgments whenever such action is appropriate to accomplish justice." Bouret-Echevarría v. Caribbean Aviation Maint. Corp., 784 F.3d 37, 41 (1st Cir. 2015) (quotation omitted). Specifically, Rule 60(b)(6) permits a court to vacate a judgment for "any other reason [besides those specified in Rule 60(b)(1)-(5)] that justifies relief." Vacatur is fundamentally an equitable doctrine, and a party seeking vacatur must show that the equities tilt in its favor. See Shelby v. Superformance Int'l, Inc., 435 F.3d 42, 47 (1st Cir. 2006).

In U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership, the Supreme Court held that, in the absence of "exceptional circumstances," an appellate court should not vacate a lower court judgment under review if the case becomes moot due to settlement. 513 U.S. 18, 29 (1994); see also Motta v. Dist. Dir. of Immigration & Naturalization Servs., 61 F.3d 117, 118-19 (1st Cir. 1995) (per curiam) (vacating a lower court judgment on appeal because the parties settled while the appeal was pending

3

and exceptional circumstances justified vacatur). Courts are split on whether Bancorp's presumption against vacatur and exceptional circumstances test apply to district court decisions to vacate their own judgments upon settlement. Compare Marseilles Hydro Power LLC v. Marseilles Land & Water Co., 481 F.3d 1002, 1003 (7th Cir. 2007) (stating in dicta that Bancorp's exceptional circumstances test does not apply to district courts), and Am. Games, Inc. v. Trade Prods., Inc., 142 F.3d 1164, 1167-70 (9th Cir. 1998) (holding that an equitable balancing test, not Bancorp's exceptional circumstances test, applies to district courts), with Amoco Oil Co. v. U.S. Envtl. Prot. Agency, 231 F.3d 694, 698 (10th Cir. 2000) (assuming Bancorp applies to district courts), and Tustin v. Motorists Mut. Ins. Co., 668 F. Supp. 2d 755, 762 (N.D. W. Va. 2009) (same). Because Rule 60(b)(6) also requires a court to examine whether exceptional circumstances justify the extraordinary remedy of vacatur, see Bouret-Echevarría, 784 F.3d at 44, other courts have held that the Bancorp and Rule 60(b)(6) standards are identical, see Valero Terrestrial Corp. v. Paige, 211 F.3d 112, 117 (4th Cir. 2000); Vertex Surgical, Inc. v. Paradigm Biodevices, Inc., 648 F. Supp. 2d 226, 229-30 (D. Mass. 2009).

The Court need not decide the precise standard for district court vacatur of a final judgment upon settlement because exceptional circumstances justify vacatur here. At the post-

4

trial motion hearing, the Court informed the parties that it would likely remit the jury verdict and urged the parties to settle. While a party that voluntarily settles generally forfeits the right to challenge a judgment, Bancorp, 513 U.S. at 25, the equities favor vacatur when a court expressly instigates settlement discussions, see Motta, 61 F.3d at 118 (finding that exceptional circumstances justified vacatur where the parties settled "only at the suggestion" of the appellate court).

    Most importantly, declining to vacate the final judgment would grant Doe a windfall. In the absence of vacatur, if Doe proves that Leahy willfully or knowingly violated Chapters 93A and 176D, the Court would double or treble the $18.4 million final judgment to calculate damages. See Rhodes v. AIG Domestic Claims, Inc., 961 N.E.2d 1067, 1078 (Mass. 2012) (holding that a prevailing plaintiff in a Chapter 93A lawsuit concerning "an event or a transaction that has given rise to a judgment in favor of the plaintiff" is entitled to double or treble the amount of the judgment if he proves a willful or knowing violation). Because the Court intended to remit the verdict, and told the parties it was likely to do so, it would be inequitable to allow Doe to use the $18.4 million figure to calculate multiple damages. Leahy's inability to challenge the judgment heightens the inequity. Declining to vacate under these circumstances would incentivize plaintiffs in Doe's position to

settle strategically post-judgment to avoid remittitur of an unduly large jury verdict. Doe also agreed to vacate the judgment as part of the settlement, and both sides were aware of his intention to file a new lawsuit against Leahy when they entered into the settlement agreement. Doe presumably received something of value in the settlement for his consent to vacatur, and the Court cannot allow Doe to escape his end of this bargained-for exchange.

## **ORDER**

Accordingly, Dr. Hreib and Dr. Southard's motion to vacate the judgment (Docket No. 240) is **ALLOWED**. The Court dismisses Doe's claims against Dr. Hreib and Dr. Southard with prejudice. SO ORDERED.

/s/ PATTI B. SARIS
Hon. Patti B. Saris
Chief United States District Judge